# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DIST

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL], | ) ) ) | 09CV4319<br>JUDGE HOLDERMAN/MAG JUDGE DENLOW |
| Plaintiffs, | ) ) | |
| v. | ) ) | **FILED IN CAMERA AND UNDER SEAL** |
| [UNDER SEAL], | ) ) | **JURY DEMAND** |
| Defendant. | ) | |

## FALSE CLAIMS COMPLAINT WITH JURY DEMAND

**FILED**

J .N    JUL 1 7 2009

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# Table of Contents

FALSE CLAIMS COMPLAINT WITH JURY DEMAND.................................................................... 1

GENERAL ALLEGATIONS ......................................................................................................... 2

COUNT I - *ANCILLARY SERVICES*............................................................................................ 3

COUNT II - *NEWLY ACQUIRED PHARMACIES* ........................................................................ 13

COUNT III - *SYNAGIS*............................................................................................................ 15

COUNT IV - *MEDICAID PRICING* ........................................................................................... 17

COUNT V - *MEDICARE CLAIMS*............................................................................................. 18

COUNT VI - *ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT* ................... 21

COUNT VII - *CALIFORNIA FALSE CLAIMS ACT* .................................................................. 23

COUNT VIII - *FLORIDA FALSE CLAIMS ACT* ....................................................................... 25

COUNT IX - *LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW*............... 27

COUNT X - *MASSACHUSETTS FALSE CLAIMS ACT* ............................................................. 28

COUNT XI - *MICHIGAN FALSE CLAIMS ACT* ...................................................................... 31

COUNT XII - *MONTANA FALSE CLAIMS ACT* ...................................................................... 33

COUNT XIII - *NEVADA FALSE CLAIMS ACT*......................................................................... 35

COUNT XIV - *NEW JERSEY FALSE CLAIMS ACT*.................................................................. 37

COUNT XV - *NEW MEXICO FRAUD AGAINST TAXPAYERS ACT*.......................................... 39

COUNT XVI - *NEW YORK FALSE CLAIMS ACT*.................................................................... 41

COUNT XVII - *OKLAHOMA MEDICAID FALSE CLAIMS ACT*............................................... 43

COUNT XVIII - *STATE FALSE CLAIMS ACT* ......................................................................... 45

COUNT XIX - *TENNESSEE MEDICAID FALSE CLAIMS ACT*................................................. 47

COUNT XX - *TEXAS MEDICAID FRAUD PREVENTION ACT* ................................................ 49

COUNT XXI - *STATE OF VIRGINIA FRAUD AGAINST TAXPAYERS ACT* ............................. 52

COUNT XXII - *STATE OF WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT*

.................................................................................................................................................... 54

COUNT XXIII - *FEDERAL MEDICAL ASSISTANCE PERCENTAGE*........................................ 56

COUNT XXIV - *FALSE CLAIMS ACT 31 U.S.C. §3730(h) (Retaliatory Discharge)* ................ 57

REQUEST FOR TRIAL BY JURY ............................................................................................... 58

PRAYER...................................................................................................................................... 58

# Summary of Exhibits

**Exhibit A**, *Example of Colorado, Illinois, Louisiana, Nevada and Washington Claim Level Documentation Deficiencies* ..................................................................Paragraph 23, Page 8

**Exhibit B**, *Summary of Wave I Payments Made on Defendant's False and Fraudulent Claims Between 2000 and 2005*.................................................................Paragraph 25, Page 9

**Exhibit C**, *Example of Region A Claim Level Documentation Deficiencies* .................................................................................................................Paragraph 25, Page 9

**Exhibit D**, *Summary of Wave II Audit Payments Made on Defendant's False and Fraudulent Claims*................................................................................. Paragraph 32, Page 14

**Exhibit E**, *Example of Louisiana Claim Level Documentation Deficiencies* ................................................................................................................ Paragraph 32, Page 14

**Exhibit F**, *2008 Pharmacy Audit Summary* ................................................ Paragraph 38, Page 16

**Exhibit G**, *Bridgeport Lakewood LTC's 2008 Pharmacy Audit*................. Paragraph 37, Page 17

**Exhibit H**, *Claim Level Synagis Distribution for Arlington Acquisition I, Inc.* ................................................................................................................Paragraph 48(a), Page 20

**Exhibit I**, *Example of Omnicare Medical Supply Services Claim Level Documentation Deficiencies* ....................................................................Paragraph 174, Page 46

**Exhibit J**, *Document Presented to Defendant's Internal Audit Committee Reflecting the Deficiencies Outlined in Count II*..............................................Paragraph 249, Page 61

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. | ) | |
| JOHN STONE, STATE OF ILLINOIS, *ex rel*. | ) | |
| JOHN STONE, STATE OF CALIFORNIA, | ) | |
| *ex rel*.  JOHN STONE, STATE OF FLORIDA, | ) | |
| *ex rel*. JOHN STONE, STATE OF LOUISIANA, | ) | |
| *ex rel*.  JOHN STONE, STATE OF | ) | No. _____ |
| MASSACHUSETTS, *ex rel*. JOHN STONE, | ) | |
| STATE OF MICHIGAN, *ex rel*. JOHN | ) | |
| STONE, STATE OF MONTANA, *ex rel*. | ) | |
| JOHN STONE, STATE OF NEVADA, *ex rel*. | ) | **FILED IN CAMERA AND** |
| JOHN STONE, STATE OF NEW JERSEY, | ) | **UNDER SEAL** |
| *ex rel*. JOHN STONE, STATE OF NEW | ) | |
| MEXICO, *ex rel*. JOHN STONE, STATE OF | ) | |
| NEW YORK, *ex rel.* JOHN STONE, STATE | ) | |
| OF OKLAHOMA, *ex rel*. JOHN STONE, | ) | **JURY DEMAND** |
| STATE OF RHODE ISLAND, *ex rel*. | ) | |
| JOHN STONE, STATE OF TENNESSEE, *ex* | ) | |
| *rel*. JOHN STONE, STATE OF TEXAS, ex rel. | ) | |
| JOHN STONE, VIRGINIA, *ex rel*. JOHN | ) | |
| STONE, STATE OF WISCONSIN, *ex rel*. | ) | |
| JOHN STONE, and JOHN STONE individually, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| OMNICARE, INC. | ) | |
| A Delaware corporation, | ) | |
| | ) | |
|     Defendant. | ) | |

## <u>FALSE CLAIMS COMPLAINT WITH JURY DEMAND</u>

NOW COMES the Plaintiffs, the United States of America, by the Relator, John Stone

("Relator"), the States of Illinois, California, Florida, Louisiana, Massachusetts, Michigan,

Montana, Nevada, New Jersey, New Mexico, New York, Oklahoma, Rhode Island, Tennessee,

Texas, Virginia and Wisconsin *ex rel.* Relator, and Relator, individually, through their attorney,

Dale J. Aschemann of Aschemann Keller LLC and for their Complaint against Omnicare, Inc. ("Omnicare" or "Defendant") alleges as follows:

## GENERAL ALLEGATIONS

1.      This is an action for damages and civil penalties on behalf of the United States of America and the State of Illinois, through the Relator, arising from false statements and records made or caused to be made by Defendant to the United States in violation of the False Claims Act, 31 U.S.C. § 3729, et seq., as amended, the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, et seq., and other state false claim statutes referenced below. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3730 (b) and, with respect to state law claims, 31 U.S.C. §3732(b).  This court also has supplemental jurisdiction over Plaintiffs' Illinois and other state law claims under 28 U.S.C. § 1367.

2.      Defendant is a Delaware corporation with its principal place of business in Covington, Kentucky.

3.      The Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a).

4.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendant can be found in, resides in, transacts or has transacted business in the Northern District of Illinois.

5.      Relator is a citizen of the United States and a resident of the State of Kentucky.

6.      From November 1, 2004 to the present, Relator has been employed by Defendant as the Vice President of Audit.

7.      As a Vice President of Audit for Defendant, Relator has direct, personal, and

independent knowledge of the facts underlying the allegations of this Complaint.

8.      Relator is the original sources of the allegations as defined in 31 U.S.C. §
3730(e)(4)(B).  Relator has knowledge of the false statements and/or claims that Defendant
submitted, or caused to be submitted, to the Government as alleged herein.

9.      Relator brings this action for violations of the False Claims Act ("FCA") on
behalf of himself and the United States of America pursuant to 31 U.S.C. § 3730(b)(1).

10.     To the extent, if any, that this case is deemed to be a related action and that facts
set forth herein are deemed to be the same as facts underlying an existing *qui tam* FCA action
pending at the time of filing of this action, as prohibited in 31 U.S.C. § 3730(e)(3), said factual
allegations in common with either pending action, which would cause this to be a related cause
of action, are hereby expressly excluded from this action, but only to the limited extent necessary
to exclude such preemption.

11.     Furthermore, to the extent that the court finds that the allegations or transactions
set forth herein are based upon allegations or transactions which are the subject of a federal civil
suit or an administrative civil money penalty proceeding in which the United States is already a
party, if any such proceedings exist, then the allegations or transactions referred to herein that the
court deems are based upon allegations or transactions which are the subject of any such civil
suit or administrative civil money penalty proceeding are expressly excluded, but only for the
specific time periods, specific companies, and specific allegations or transactions as necessary
and only for those allegations for which the Court determines Relator is not the original source.

## COUNT I - *ANCILLARY SERVICES*

12.     Relator incorporates and re-alleges Paragraphs 1-11 as if fully set forth in this Count
I.

13.     Defendant conducts business in forty-seven (47) states in the United States, the District of Columbia, and Canada.

14.     Defendant is the nation's largest provider of pharmaceuticals and related pharmacy and ancillary services to long-term healthcare institutions.  Defendant's clients include primarily skilled nursing facilities ("SNFs"), assisted living facilities ("ALFs"), retirement centers, independent living communities, hospices, and other healthcare settings and service providers.

15.     With respect to Defendant's ancillary services, Defendant provides services including, but not limited to, intravenous medications and nutrition products, respiratory therapy services, and other durable medical equipment and supplies.

16.     Defendant generated approximately 100 million dollars in annual revenue in 2008 from its provision of ancillary services, approximately 60 percent of which derived from the Medicare and Medicaid programs.

17.     Defendant wholly owns, operates, and controls facilities which provide ancillary services in the following States:

        a.     Arkansas

        b.     California

        c.     Colorado

        d.     Connecticut

        e.     Idaho

        f.     Illinois

        g.     Kentucky

        h.     Louisiana

        i.     Maine

j.      Massachusetts

k.      Maryland

l.      Michigan

m.      Montana

n.      Nevada

o.      New Jersey

p.      New Mexico

q.      New York

r.      Ohio

s.      Oklahoma

t.      Oregon

u.      Pennsylvania

v.      Rhode Island

w.      Tennessee

x.      Texas

y.      Vermont

z.      Virginia

aa.     Washington

bb.     Wisconsin

cc.     Wyoming

18.     In addition to Medicare claims explained below, Defendant submitted claims to the

above listed states' respective Medicaid programs which programs are funded with both state and

federal monies.  The Federal Government pays a share of the medical assistance expenditures under

5

each State's Medicaid program. That share, known as the Federal Medical Assistance Percentage

("FMAP") or the Federal Financial Participation  ("FFP"), is determined annually by a formula that

compares the State's average per capita income level with the national income average. States with a

higher per capita income level are reimbursed a smaller share of their costs. By law, the FMAP

cannot be lower than 50 percent or higher than 83 percent.

19.     During 2007, Defendant performed an internal audit of claims encompassing the

period 2000-2005 for its facilities that provide ancillary services ("Wave I").  Defendant's internal

audit, corporate compliance, and at least one third-party consultant verified the results of Wave I.

20.     Defendant initiated Wave I to ascertain whether its Medicare and Medicaid claims

for ancillary services were in conformity with Medicare regulations including the Program Integrity

Manual CMS Publication #100-08 ("Manual") and respective State Medicaid regulations.

21.     With respect to Medicare, the Manual  provides numerous requirements with

respect to Durable Medical Equipment, Prosthetic, and Orthotic suppliers' Medicare and

Medicaid reimbursement claims, which include, by way of example, the following:

> a.     (5.2.1) The supplier for all Durable Medical Equipment, Prosthetic, and
> Orthotic Supplies ("DMEPOS") is required to keep on file a signed
> physician prescription (order). A supplier must have an order from the
> treating physician before dispensing any DMEPOS item to a beneficiary;
>
> b.     (5.2.3) Detailed written orders are required for all transactions involving
> DMEPOS...and must clearly specify the start date of the order. If the
> supply is a drug, the order must specify the name of the drug,
> concentration (if applicable), dosage, frequency of administration, and

duration of infusion (if applicable). The supplier must have a detailed written order prior to submitting a Medicare claim.

c.  (5.3)  A Certificate of Medical Necessity (CMN) or a DME Information Form (DIF) is a form required to help document the medical necessity and other coverage criteria for selected DMEPOS items.

d.  (5.4)  Section 1833(e) of the Social Security Act requires that Medicare be furnished by providers and suppliers "such information as may be necessary in order to determine the amount due…"  If a claim has insufficient information to determine the amount due, the underlying claim is improper because Medicare does not have sufficient information to determine whether the claim is reasonable and necessary.

e.  (5.7)  For any DMEPOS to be covered by Medicare, the patient's medical record must contain sufficient documentation of the patient's medical condition, which includes, but is not limited to, the duration of the patient's condition, clinical course (worsening or improvement), prognosis, nature and extent of functional limitations, etc.;

f.  (5.8)  Before submitting a claim to a Medicare Administrative Contractor, the supplier must have on file a dispensing order, the detailed written order, the CMN (if applicable), the DME Information Form (if applicable), information from the treating physician concerning the patient's diagnosis, and any information required for the use of specific modifiers or attestation statements as defined in certain DME Medicare Administrative Contractor policies.

22.     Defendant's Internal Audit and Corporate Compliance undertook the Wave I audit in the following manner:

a.     For each year between 2000 and 2005, Defendant selected eighteen (18) of Defendant's pharmacy facilities which provided ancillary services;

b.     For each year between 2000 and 2005, or commencing from the year Omnicare acquired the pharmacy facility providing ancillary services, Defendant examined thirty-nine (39) claims;

c.     The claims in question were selected in a manner to reflect a "probe" sample, i.e., one which lacks random selection such that the results could be statistically extrapolated; and,

d.     Defendant determined whether the 39 claims per company per year for Medicare and Medicaid reimbursement met its respective State's statutory and regulatory requirements.

23.     Wave I provided claim level analysis of the facilities' Medicare and Medicaid documentation deficiencies per pharmacy facility per year (a copy of claim level documentation deficiencies of Colorado, Illinois, Louisiana, Nevada and Washington are collectively attached as Exhibit A).  The results of Wave I reflected the following deficiencies:

a.     Patient file supporting documentation was not provided;

b.     Missing emergency kit charge slip;

c.     Missing facility certification statement;

d.     Missing or inadequate proof of delivery documentation;

e.     Missing or inadequate physician orders;

f.     Valid Authorization of Benefits forms were not being mandated;

g.      Other missing documentation

24.      Durable Medical Equipment Regional Carriers ("DMERC") process and review

Medicare claims (typically "Part B" claims) for durable medical equipment, prosthetics,

orthotics, and supplies including parental/enteral feeding supplies for four mutually exclusive

regions: Region A, Region B, Region C and Region D.

25.      The Wave I results reflected that Omnicare's pharmacy facilities inappropriately

submitted false because un-reimbursable claims to DMERC Region A, Region B, Region C and

Region D between 2000 and 2005. The following represents a portion of the false and fraudulent

claims that were paid by each respective region between 2000 and 2005 (a complete summary of

the Wave I DMERC payments made on Defendant's false and fraudulent claims between 2000

and 2005 is attached as Exhibit B, and a claim level example of Region A is attached as Exhibit

C):

a.      Region A DMERC paid:

i.      $58,261.56

b.      Region B DMERC paid:

i.      $33,982.86

c.      Region C DMERC paid:

i.      $35,298.27

e.      Region D DMERC paid:

i.      $29,989.22

26.      The Wave I results further reflected that Omnicare's pharmacy facilities

inappropriately submitted false and fraudulent claims to various State Medicaid programs

between 2000 and 2005 which claims were paid by the respective states.

27.     The following is a sample of false and fraudulent Medicaid claims paid by each individual State between 2000 and 2005:

      a.      Illinois Medicaid paid:

          i.     $25,509.46

      b.      Colorado Medicaid paid:

          i.     $24,638.77

      c.      Louisiana Medicaid paid:

          i.     $146,022.75

      d.      Nevada Medicaid paid:

          i.     $38,038.36

      e.      Washington Medicaid paid:

          i.     $80,641.62

28.     The results of Wave I reveal that Defendant's pharmacy facilities have engaged in a pattern and practice of systematically making claims upon the Medicare and Medicaid program which were unjustified, unjustifiable, and false.

29.     Defendant's facilities' "error rates" (defined as unsupportable claims relative to total claims) were so high that Defendant knew or should have known that false and fraudulent claims were being made.

30.     Upon completion of Wave I, Defendant knew or should have known that, for the years 2000 through 2005:

      a.      systemic problems existed with respect to its pharmacy facilities' submissions of ancillary-related claims to the Medicare and State Medicaid programs; and,

b.      the "probe" sample audit of Wave I did not identify all of the false and

fraudulent claims made upon the Medicare and State Medicaid programs;

31.      In 2008, Defendant performed a second internal audit ("Wave II") of fifteen (15)

pharmacy facilities. The Wave II audit consisted of examining 30 claims from each pharmacy

facility for 2008 employing the criteria utilized in Wave I.

32.      The results of the Wave II audit (a summary of which is attached as Exhibit D,

and, by way of example, a copy of claim level documentation deficiencies submitted to

Louisiana Medicaid is attached as Exhibit E) indicated the following Medicare and Medicaid

reimbursement documentation deficiencies:

a.      Missing Nursing Flow Sheet or other evidence in the patient's chart prior

to claim submission to support the quantity of ancillaries dispensed and

billed;

b.      Missing or invalid emergency kit charge slip;

c.      Missing or late facility certification statement;

d.      Missing or inadequate Assignment of Benefits ("AOB");

e.      Missing or inadequate pulse oximetry results;

f.      Missing detailed written order ("DWO");

g.      DWO failed to contain patient's diagnosis or evidenced a different start

date than the supporting dispensing order and the end date of such order

was altered, but no initials/date were provided to evidence who made the

change or when the change was made;

h.      Missing or inadequate dispensing order to support the quantity dispensed;

i.      Certificate of Medical Necessity ("CMN") referenced a different start date than that was evidenced on the corresponding dispensing order;

j.      Missing rent/purchase letter showing the supplier advised the beneficiary of their rent/purchase options;

k.      Missing delivery ticket to support the quantity billed or missing signature and/or date of patient or designee receiving the item;

l.      Physician order ("PO") was received after Medicare/Medicaid claim submission;

m.      Missing PO or the PO was not certified (signed) and/or dated by the prescribing physician to support the dosage dispensed by the pharmacy;

n.      Verbal PO was not properly documented by the respective pharmacist (i.e. physician/authorized agent giving the order was not noted at the time the order was reduced);

o.      Claim was missing documentation to prove whether the diagnosis code submitted was provided by the physician, was submitted with a diagnosis code other than the diagnosis code shown on the physician's order, or was submitted with diagnosis codes not provided by the physician;

p.      Missing facesheet, or the facesheet was obtained after the inception of Wave II;

q.      Missing or inadequate refill requests for incontinence garments and/or related supplies; and,

r.      Overbilling as a result of dispensing more product than was ordered by the prescriber.

33.     Without further examination of the claims submitted during the period 2000 through 2005 – despite an enormous error rate and having conducted only a "probe" audit – and with knowledge of the Wave II audit results, Defendant reimbursed each of the respective DMERC Regions A, B, C and D for the Wave I findings and falsely asserted that the Medicare program was made whole by that payment.

34.     While possessing knowledge of the deficiencies discovered during the Wave I and Wave II audits, Defendant failed to repay any of the State Medicaid programs for false and fraudulent claims submitted.

35.     While possessing knowledge of the deficiencies discovered during the Wave I and Wave II audits, Defendant failed to inform the United States of, or repay the United States for, the federal portion of amounts expended under the various State Medicaid programs.

### COUNT II - *NEWLY ACQUIRED PHARMACIES*

36.     Relator incorporates by reference and re-alleges Paragraphs 1- 35 as if fully set forth herein.

37.     Defendant conducts business in 47 States and owns, operates and controls numerous long-term care pharmacy facilities.

38.     In 2008, Defendant undertook an audit to examine whether its most recently acquired pharmacies (generally those pharmacies acquired within one year of commencement of the audit but no longer than two years), were in compliance with Medicare and various State Medicaid regulations ("Pharmacy Audit" a copy of the 2008 audit summary is attached as Exhibit F). The Pharmacy Audit revealed that the pharmacies were in violation of the statutory and regulatory requirements for Medicare and Medicaid reimbursement due to, by way of example, the following order processing errors:

13

a.   Patient Visit 1 ("PV1") Not Signed Off;

b.   Patient Visit 2 ("PV2") Not Signed Off;

c.   Order Missing;

d.   Missing Original Order;

e.   Order Not Signed;

f.   Missing Title of Person Signing;

g.   Signature Not Valid;

h.   Order Not Dated;

i.   Date of Order Not Valid;

j.   Delivery Ticket Missing;

k.   Delivery Ticket Not Signed; and,

l.   Quantity Does Not Match.

39.   Defendant's Pharmacy Audit also found that the pharmacies were in violation of the statutory and regulatory requirements for Medicare (typically "Part D" claims) and Medicaid reimbursement due to the following control test failures (a copy, by way of example, of Bridgeport Lakewood LTC's 2008 Pharmacy Audit is attached as Exhibit G):

a.   Trend Analysis;

b.   GL245 (Journal Entry) Review;

c.   Lawson Security;

d.   Operating System Security;

e.   Pending Reports;

f.   Price Change Reports;

g.   Price Override Report;

      h.      Per Diem Contracts;

      i.      Held Up/Flagged Transaction Report; and,

      j.      Medicaid/Third Party Rejected Claim Aging.

40.     Defendant was fully aware of the above mentioned deficiencies and that their wholly owned, operated and controlled pharmacies were submitting false and fraudulent Medicare and Medicaid claims.

41.     Defendant failed to employ the following, by way of example, necessary corrective administrative procedures to address their wholly owned, operated and controlled pharmacies' deficiencies:

      a.      Update the newly acquired pharmacies' software to conform to the statutory and regulatory requirements of Medicare and Medicaid;

      b.      Implement new employee training procedures that focus on ensuring the pharmacy meets the statutory and regulatory requirements of Medicare and Medicaid;

      c.      Update the newly acquired pharmacies' manuals and protocols to conform to the statutory and regulatory requirements of Medicare and Medicaid;

      d.      Notify the Government or individual state governments of the pharmacies' documentation deficiencies.

## COUNT III - *SYNAGIS*

42.     Relator incorporates by reference and re-alleges Paragraphs 1- 41 as if fully set forth herein.

43.     Defendant is a purchaser and distributor of the pediatric medication known as Synagis (*Palivizumab–RSV–IgM*).

44.     Synagis is an antibody typically prescribed to premature children under the age of two to fight off the respiratory syncytial virus ("RSV"), which can cause serious illness in children.  Specifically, the drug is utilized to prevent serious low respiratory tract disease caused by RSV in pediatric patients at high risk of RSV disease.

45.     Synagis is supplied as a sterile, preservative-free liquid in solution at 100mg/mL and 50mg/mL vials to be administered by intramuscular injection.  Because of the lack of preservative, Synagis must be refrigerated.

46.     Synagis' Food and Drug Administration ("FDA") approved label provides: "The single-dose vial of Synagis does not contain a preservative. Administration of Synagis should occur immediately after dose withdrawal from the vial. The vial should not be re-entered. *Discard any unused portion.*" (Emphasis added).  Thus, for example, if a prescription orders a dosage of 104mg/mL of Synagis for Patient A, the pharmacy typically orders one 100mg/mL vial and one 50mg/mL vial of Synagis.  Synagis' label requires that the pharmacist then discard the excess 46mg/mL of Synagis to prevent, for example, the risks associated with future off-label distribution or the deterioration of the pharmaceutical.

47.     Defendant's facilities engaged in a pattern and practice of submitting claims to State Medicaid for payments to cover Synagis purchases, which ranged from $402.05 to $7,739.10 per vial.

48.     Defendant's facilities engaged in the pattern and practice of not only violating FDA regulations, but also submitting false claims to receive Medicaid reimbursement in one or more of the following ways:

   a.     Defendant intentionally ordered excess Synagis and failed to discard the excess medication as required by Synagis' FDA approved label (see, by way

       of example, the claim level Synagis distribution for Arlington Acquisition I, Inc. attached as Exhibit H);

    b.     Defendant's facilities engaged in the pattern and practice of stockpiling excess Synagis from previous prescriptions and filling new prescriptions with the excess Synagis from previous patients; and,

    c.     Defendant's facilities engaged in the pattern and practice of billing State Medicaid for each Synagis vial prescribed while many, if not most, of the new patients' prescriptions were being filled with the facility's stockpiled Synagis excess.

49.    Thus, Defendant's facilities engaged in a pattern and practice of systematically making claims upon State Medicaid programs which were unjustified, unjustifiable, and false.

## COUNT IV - *MEDICAID PRICING*

50.    Relator incorporates by reference and re-alleges Paragraphs 1- 11 as if fully set forth herein.

51.    Defendant performed an Internal Audit ("Audit"), in conjunction with Wave II, to determine whether its wholly owned, operated and controlled facilities were in compliance with each State's Medicaid regulations with regard to Medicaid pricing.

52.    According to most, if not all, State Medicaid regulations, the usual and customary charge billed to Medicaid can not exceed the usual and customary charge billed to non-Medicaid covered beneficiaries.

53.    According to most, if not all, State Medicaid regulations, facilities found in violation of the usual and customary billing provisions will be subject to recoupment of any identified overpayment.

54.    The results of the Audit revealed the following results for Pharmacy Solutions Inc. ("PSI") in Conway, Arkansas:

    a.    Nine (9) pricing plans, which encompassed just over forty percent (40.28%) of the total patients at PSI, were billed at a rate lower than the rate billed to Arkansas Medicaid;

    b.    Of the 9 pricing plans, almost one hundred percent (99.6%) of the patients were billed at a rate ten percent (10%) less than the Arkansas Medicaid rate.

55.    The results of Wave II indicated that Colorado Respiratory's usual and customary charge billed to Colorado Medicaid was greater than the usual and customary charge billed to Colorado Sava Nursing Facilities.

56.    Based on the results of the Audit and Wave II, Defendant knew or should have known that:

    a.    Defendant's facilities engaged in the pattern and practice of billing Medicaid at a rate greater than the usual and customary rate charged to non-Medicaid beneficiaries;

    b.    Neither the Audit nor Wave II identified all of Defendant's facilities that overbilled Medicaid.

### COUNT V - *MEDICARE CLAIMS*

57.    Relator incorporates by reference and re-alleges Paragraphs 1-41 as if fully set forth herein.

58.     This is an action for damages and civil penalties on behalf of the Government arising from false statements and records made or caused to be made by Defendant to the Government in violation of the FCA, 31 U.S.C. § 3729, et seq., as amended.

59.     That 31 U.S.C. § 3729 of the FCA states in pertinent part as follows:

(a)     LIABILITY FOR CERTAIN ACTS

(1)     IN GENERAL.—Subject to paragraph (2), any person who—

(A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C)     conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D)     has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E)     is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(F)     knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G)     knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

60.     Defendant knowingly presented, or caused to be presented, false or fraudulent Medicare claims for payment or approval.

61.     Defendant knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim.

62.     Defendant defrauded the Government by getting false or fraudulent claims allowed or paid.

63.     The Government, unaware of the falsity of the records, statements or Claims made by Defendant, paid Defendant for Claims that would otherwise not have been allowed.

64.     Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the Government.

65.     By reason of these payments, the Government was and continues to suffer damages in a substantial amount.

66.     The Government was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicare reimbursement claims to its detriment.

67.     The Government, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should

not have been and should not be paid, based upon Defendant's false and fraudulent Medicare

reimbursement claims.

### COUNT VI - *ILLINOIS WHISTLEBLOWER REWARD AND PROTECTION ACT*

68.    Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set

forth herein.

69.    This is an action for damages and civil penalties on behalf of the state of Illinois

arising from false and fraudulent statements and records made or caused to be made by Defendant

to the State of Illinois in violation of the Illinois Whistleblower Reward and Protection Act, 740 ILL.

COMP. STAT. 175/1, et seq., as amended ("IWRPA").

70.    That 740 ILL. COMP. STAT. 175/3 of the IWRPA states as follows:

Liability for certain acts.  Any person who:

(1)    knowingly presents, or causes to be presented, to an officer or employee of
the State or a member of the Guard a false or fraudulent claim for payment
or approval;

(2)    knowingly makes, uses, or causes to be made or used, a false record or
statement to get a false or fraudulent claim paid or approved by the State:

(3)    conspires to defraud the State by getting a false or fraudulent claim
allowed or paid;

(4)    has possession, custody, or control of property or money used, or to be
used, by the State and, intending to defraud the State or willfully to
conceal the property, delivers, or causes to be delivered, less property than
the amount for which the person receives a certificate or receipt;

(5)    authorized to make or deliver a document certifying receipt of property
used, or to be used, by the State and, intending to defraud the State, makes
or delivers the receipt without completely knowing that the information on
the receipt is true;

(6)    knowingly buys, or receives as a pledge of an obligation or debt, public
property from an officer or employee of the State, or a member of the
Guard, who lawfully may not sell or pledge the property; or

21

(7)    knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State,

is liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the State sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages.

71.    Defendant knowingly presented, or caused to be presented, to an officer or employee of the State of Illinois, a false or fraudulent claim for payment or approval.

72.    Defendant knowingly made used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois.

73.    Defendant defrauded the State of Illinois by getting a false or fraudulent claim allowed or paid.

74.    Plaintiff State of Illinois, unaware of the falsity of the records, statements or Claims made by Defendant, paid Defendant for Claims that would otherwise not have been allowed.

75.    By reason of these payments, Plaintiff State of Illinois was and continues to suffer damages in a substantial amount.

76.    Plaintiff State of Illinois was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

77.    Plaintiff State of Illinois, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should

not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT VII - *CALIFORNIA FALSE CLAIMS ACT*

78.     Relator incorporates by reference and re-alleges Paragraphs 1-41 as if fully set forth herein.

79.     This is an action for damages and civil penalties on behalf of the State of California arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of California in violation of the California False Claims Act, CAL. GOV'T. CODE § 12650, et seq.

80.     That § 12651 of the California False Claims Act states:

 (a) Any person who commits any of the following acts shall be liable to the state or to the political subdivision for three times the amount of damages which the state or the political subdivision sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and may be liable to the state or political subdivision for a civil penalty of up to ten thousand dollars ($10,000) for each false claim:

  (1) Knowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval.

  (2) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision.

  (3) Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.

  (4) Has possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt.

(5)   Is authorized to make or deliver a document certifying receipt of property used or to be used by the state or by any political subdivision and knowingly makes or delivers a receipt that falsely represents the property used or to be used.

(6)   Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property.

(7)   Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision.

(8)   Is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

81.    Defendant knowingly presented or caused to be presented to an officer or employee of the State of California, a false claim for payment or approval.

82.    Defendant knowingly made, used, or caused to be made or used a false record or statement to get a false claim paid or approved by the State of California.

83.    Defendant defrauded the State of California by getting a false claim allowed or paid by the State of California.

84.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of California.

85.    Defendant was a beneficiary of an inadvertent submission of a false claim to the State of California, subsequently discovered the falsity of the claim, and failed to disclose the false claim to the State of California within a reasonable time after discovery of the false claim.

86.     By reason of these payments, Plaintiff State of California was and continues to suffer damages in a substantial amount.

87.     Plaintiff State of California was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

88.     Plaintiff State of California, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT VIII - *FLORIDA FALSE CLAIMS ACT*

89.     Relator incorporates by reference and re-alleges Paragraphs 1-11 and Paragraphs 37-41 as if fully set forth herein.

90.     This is an action for damages and civil penalties on behalf of the State of Florida arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Florida in violation of the Florida False Claims Act, FLA. STAT. § 68.081, et seq.

91.     That § 68.082(2) of the Florida False Claims Act states:

   (2)     Any person who:

      (a)     Knowingly presents or causes to be presented to an officer or employee of an agency a false or fraudulent claim for payment or approval;

      (b)     Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by an agency;

(c)     Conspires to submit a false or fraudulent claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid;

(d)     Has possession, custody, or control of property or money used or to be used by an agency and, intending to deceive the agency, knowingly conceal the property, delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt;

(e)     Is authorized to make or deliver a document certifying receipt of property used or to be used by an agency and, intending to deceive the agency, makes or delivers the receipt without knowing that the information on the receipt is true;

(f)     Knowingly buys or receives, as a pledge of an obligation or a debt, public property from an officer or employee of an agency who may not sell or pledge the property lawfully; or

(g)     Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to an agency,

is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

92.     Defendant knowingly presented, or caused to be presented, false or fraudulent Medicare and Medicaid claims to Florida for payment or approval.

93.     Defendant knowingly made, used, caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State of Florida.

94.     Defendant defrauded the State of Florida by getting a false or fraudulent claim allowed or paid.

95.     Defendant knowingly made, used, caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Florida.

96.     By reason of these payments, Plaintiff State of Florida was and continues to suffer damages in a substantial amount.

97.     Plaintiff State of Florida was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

98.     Plaintiff State of Florida, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

### COUNT IX - *LOUISIANA MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW*

99.     Relator incorporates by reference and re-alleges Paragraphs 1-49 as if fully set forth herein.

100.    This is an action for damages and civil penalties on behalf of the State of Louisiana arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Louisiana in violation of the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. § 46:437.1, et seq.

101.    That § 46:438.3 of the Louisiana Medical Assistance Programs Integrity Law states:

        A.     No person shall knowingly present or cause to be presented a false or fraudulent claim.

        B.     No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds.

      C.     No person shall conspire to defraud, or attempt to defraud, the medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

102.     Defendant knowingly presented or caused to be presented a false or fraudulent claim.

103.     Defendant knowingly engaged in misrepresentation to obtain, or attempt to obtain, payment from medical assistance programs funds.

104.     Defendant defrauded the State of Louisiana's medical assistance programs through misrepresentation or by obtaining, or attempting to obtain, payment for a false or fraudulent claim.

105.     By reason of these payments, Plaintiff State of Louisiana was and continues to suffer damages in a substantial amount.

106.     Plaintiff State of Louisiana was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

107.     Plaintiff State of Louisiana, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT X - *MASSACHUSETTS FALSE CLAIMS ACT*

108.     Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

109.     This is an action for damages and civil penalties on behalf of the State of

Massachusetts arising from false and fraudulent statements and records made or caused to be made

by Defendant to the State of Massachusetts in violation of the Massachusetts False Claims Act,

MASS. GEN. LAWS ch.12, § 5A, et seq.

110.     That § 5(B) of the Massachusetts False Claims Act states as follows:

Any person who:

(1)     knowingly presents, or causes to be presented, a false or fraudulent claim
for payment or approval;

(2)     knowingly makes, uses, or causes to be made or used, a false record or
statement to obtain payment or approval of a claim by the commonwealth
or any political subdivision thereof;

(3)     conspires to defraud the commonwealth or any political subdivision
thereof through the allowance or payment of a fraudulent claim;

(4)     has possession, custody, or control of property or money used, or to be
used, by the commonwealth or any political subdivision thereof and
knowingly delivers, or causes to be delivered to the commonwealth, less
property than the amount for which the person receives a certificate or
receipt with the intent to willfully conceal the property;

(5)     is authorized to make or deliver a document certifying receipt of property
used, or to be used, by the commonwealth or any political subdivision
thereof and with the intent of defrauding the commonwealth or any
political subdivision thereof, makes or delivers the receipt without
completely knowing that the information on the receipt is true;

(6)     buys, or receives as a pledge of an obligation or debt, public property from
an officer or employee of the commonwealth or any political subdivision
thereof, knowing that said officer or employee may not lawfully sell or
pledge the property;

(7)     enters into an agreement, contract or understanding with one or more
officials of the commonwealth or any political subdivision thereof
knowing the information contained therein is false;

(8)     knowingly makes, uses, or causes to be made or used, a false record or
statement to conceal, avoid, or decrease an obligation to pay or to transmit

money or property to the commonwealth or political subdivision thereof; or

(9)    is a beneficiary of an inadvertent submission of a false claim to the commonwealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim shall be liable to the commonwealth or political subdivision for a

civil penalty of not less than $5,000 and not more than $10,000 per violation, plus three times the amount of damages, including consequential damages, that the commonwealth or political subdivision sustains because of the act of that person. A person violating sections 5B to 5O, inclusive, shall also be liable to the commonwealth or any political subdivision for the expenses of the civil action brought to recover any such penalty or damages, including without limitation reasonable attorney's fees, reasonable expert's fees and the costs of investigation, as set forth below. Costs recoverable under said sections 5B to 5O, inclusive, shall also include the costs of any review or investigation undertaken by the attorney general, or by the state auditor or the inspector general in cooperation with the attorney general.

111.    Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval.

112.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to obtain payment or approval of a claim by the State of Massachusetts.

113.    Defendant defrauded the State of Massachusetts through the allowance or payment of a fraudulent claim.

114.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or to transmit money or property to the State of Massachusetts.

115.    Defendant was a beneficiary of an inadvertent submission of a false claim to the State of Massachusetts, subsequently discovered the falsity of the claim, and failed to disclose

the false claim to the State of Massachusetts within a reasonable time after discovery of the false claim

116.    By reason of these payments, Plaintiff State of Massachusetts was and continues to suffer damages in a substantial amount.

117.    Plaintiff State of Massachusetts was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

118.    Plaintiff State of Massachusetts, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XI - *MICHIGAN FALSE CLAIMS ACT*

119.    Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

120.    This is an action for damages and civil penalties on behalf of the State of Michigan arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Michigan in violation of the Michigan Medicaid False Claims Act, MICH. COMP. LAWS § 400.601, et seq.

121.    That § 400.603 of the Michigan Medicaid False Claims Act states:

(1)    A person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for medicaid benefits.

(2)   A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a medicaid benefit.

(3)   A person, who having knowledge of the occurrence of an event affecting his initial or continued right to receive a medicaid benefit or the initial or continued right of any other person on whose behalf he has applied for or is receiving a benefit, shall not conceal or fail to disclose that event with intent to obtain a benefit to which the person or any other person is not entitled or in an amount greater than that to which the person or any other person is entitled.

(4)   A person who violates this section is guilty of a felony, punishable by imprisonment of not more than 4 years, or a fine of not more than $50,000.00, or both.

122.   Defendant knowingly made or caused to be made a false statement or false representation of a material fact in an application for Medicaid benefits.

123.   Defendant knowingly made or caused to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit.

124.   Defendant possessed knowledge of the occurrence of an event affecting their initial or continued right to receive a Medicaid benefit or the initial or continued right of any other person on whose behalf he has applied for or is receiving a benefit, and concealed and failed to disclose that event with intent to obtain a benefit to which the Defendant was not entitled or in an amount greater than that to which the Defendant was entitled.

125.   By reason of these payments, Plaintiff State of Michigan was and continues to suffer damages in a substantial amount.

126.   Plaintiff State of Michigan was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

127.    Plaintiff State of Michigan, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XII - *MONTANA FALSE CLAIMS ACT*

128.    Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

129.    This is an action for damages and civil penalties on behalf of the State of Montana arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Montana in violation of the Montana False Claims Act, MONT. CODE. ANN. § 17-8-401, et seq., effective July 1, 2009.

130.    That § 17-8-403 of the Montana False Claims Act states:

1)    A person is liable to a governmental entity for a civil penalty of not less than $5,000 and not more than $10,000 for each act specified in this section, plus three times the amount of damages that a governmental entity sustains because of the person's act, along with expenses, costs, and attorney fees, if the person:

(a)    knowingly presents or causes to be presented to an officer or employee of the governmental entity a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the governmental entity;

(c)    conspires to defraud the governmental entity by getting a false or fraudulent claim allowed or paid by the governmental entity;

(d)    has possession, custody, or control of public property or money used or to be used by the governmental entity and with the intent to defraud the governmental entity or to willfully conceal the property, delivers or causes to be delivered less property or money

than the amount for which the person receives a certificate or receipt;

(e)     is authorized to make or deliver a document certifying receipt of property used or to be used by the governmental entity and with the intent to defraud the governmental entity or to willfully conceal the property, makes or delivers a receipt without knowing that the information on the receipt is true;

(f)     knowingly buys or receives as a pledge of an obligation or debt public property of the governmental entity from any person who may not lawfully sell or pledge the property;

(g)     knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the governmental entity or its contractors; or

(h)     as a beneficiary of an inadvertent submission of a false or fraudulent claim to the governmental entity, subsequently discovers the falsity of the claim or that the claim is fraudulent and fails to disclose the false or fraudulent claim to the governmental entity within a reasonable time after discovery of the false or fraudulent claim

131.    Defendant knowingly presented or caused to be presented to an officer or employee of State of Montana a false or fraudulent claim for payment or approval.

132.    Defendant knowingly made, used, or caused to be made or used a false record or statement to get a false claim paid or approved by the State of Montana.

133.    Defendant knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Montana.

134.    Defendant defrauded the State of Montana by getting a false or fraudulent claim allowed or paid.

135.    Defendant was a beneficiary of an inadvertent submission of a false or fraudulent claim to the State of Montana subsequently discovered the falsity of the claim or that the claim is

34

fraudulent and failed to disclose the false or fraudulent claim to the State of Montana within a reasonable time after discovery of the false or fraudulent claim.

136.    By reason of these payments, Plaintiff State of Montana was and continues to suffer damages in a substantial amount.

137.    Plaintiff State of Montana was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

138.    Plaintiff State of Montana, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XIII - *NEVADA FALSE CLAIMS ACT*

139.    Relator incorporates by reference and re-alleges Paragraphs 1-35 and Paragraphs 43-49 as if fully set forth herein.

140.    This is an action for damages and civil penalties on behalf of the State of Nevada arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Nevada in violation of the Nevada False Claims Act, NEV. REV. STAT. § 357.010, et seq.

141.    That § 357.040(1) of the Nevada False Claims Act states:

1.    Except as otherwise provided in NRS 357.050, a person who, with or without specific intent to defraud, does any of the following listed acts is liable to the state or a political subdivision, whichever is affected, for three times the amount of damages sustained by the state or political subdivision because of the act of that person, for the costs of a civil action brought to

recover those damages and for a civil penalty of not less than $2,000 or more than $10,000 for each act:

(a)     Knowingly presents or causes to be presented a false claim for payment or approval.

(b)     Knowingly makes or uses, or causes to be made or used, a false record or statement to obtain payment or approval of a false claim.

(c)     Conspires to defraud by obtaining allowance or payment of a false claim.

(d)     Has possession, custody or control of public property or money and knowingly delivers or causes to be delivered to the state or a political subdivision less money or property than the amount for which he receives a receipt.

(e)     Is authorized to prepare or deliver a receipt for money or property to be used by the state or a political subdivision and knowingly prepares or delivers a receipt that falsely represents the money or property.

(f)     Knowingly buys, or receives as security for an obligation, public property from a person who is not authorized to sell or pledge the property.

(g)     Knowingly makes or uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state or a political subdivision.

(h)     Is a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, fails to disclose the falsity to the state or political subdivision within a reasonable time.

142.    Defendant knowingly presented or caused to be presented a false claim for payment or approval.

143.    Defendant knowingly made or used, or caused to be made or used, a false record or statement to obtain payment or approval of a false claim.

144.    Defendant defrauded the State of Nevada by getting a false or fraudulent claim allowed or paid.

145.    Defendant knowingly made or used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Nevada.

146.    Defendant was a beneficiary of an inadvertent submission of a false claim and, after discovering the falsity of the claim, failed to disclose the falsity to the State of Nevada within a reasonable time.

147.    By reason of these payments, Plaintiff State of Nevada was and continues to suffer damages in a substantial amount.

148.    Plaintiff State of Nevada was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

149.    Plaintiff State of Nevada, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XIV - *NEW JERSEY FALSE CLAIMS ACT*

150.    Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

151.    This is an action for damages and civil penalties on behalf of the State of New Jersey arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of New Jersey in violation of the New Jersey False Claims Act, N.J. STAT. ANN. § 2A:32C-1, et seq.

37

152.    That § 2A:32C-3 of the New Jersey False Claims Act states:

A person shall be jointly and severally liable to the State for a civil penalty of not less than and not more than the civil penalty allowed under the federal False Claims Act (*31 U.S.C. § 3729* et seq.), as may be adjusted in accordance with the inflation adjustment procedures prescribed in the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub.L.101-410, for each false or fraudulent claim, plus three times the amount of damages which the State sustains, if the person commits any of the following acts:

a.      Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false or fraudulent claim for payment or approval;

b.      Knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State;

c.      Conspires to defraud the State by getting a false or fraudulent claim allowed or paid by the State;

d.      Has possession, custody, or control of public property or money used or to be used by the State and knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt;

e.      Is authorized to make or deliver a document certifying receipt of property used or to be used by the State and, intending to defraud the entity, makes or delivers a receipt without completely knowing that the information on the receipt is true;

f.      Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property; or

g.      Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State.

153.    Defendant knowingly presented or caused to be presented to the State of New Jersey, or other recipient of State funds, a false or fraudulent claim for payment or approval.

154.    Defendant knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the State of New Jersey.

155.     Defendant defrauded the State of New Jersey by getting a false or fraudulent claim allowed or paid.

156.     Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of New Jersey.

157.     By reason of these payments, Plaintiff State of New Jersey was and continues to suffer damages in a substantial amount.

158.     Plaintiff State of New Jersey was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

159.     Plaintiff State of New Jersey, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

### COUNT XV - *NEW MEXICO FRAUD AGAINST TAXPAYERS ACT*

160.     Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

161.     This is an action for damages and civil penalties on behalf of the State of New Mexico arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of New Mexico in violation of the New Mexico Fraud Against Taxpayers Act, N.M. STAT. § 27-14-1, et seq.

162.     That § 27-14-4 of the New Mexico Fraud Against Taxpayers Act states:

A person commits an unlawful act and shall be liable to the state for three times the amount of damages that the state sustains as a result of the act if the person:

A.      presents, or causes to be presented, to the state a claim for payment under the medicaid program knowing that such claim is false or fraudulent;

B.      presents, or causes to be presented, to the state a claim for payment under the medicaid program knowing that the person receiving a medicaid benefit or payment is not authorized or is not eligible for a benefit under the medicaid program;

C.      makes, uses or causes to be made or used a record or statement to obtain a false or fraudulent claim under the medicaid program paid for or approved by the state knowing such record or statement is false;

D.      conspires to defraud the state by getting a claim allowed or paid under the medicaid program knowing that such claim is false or fraudulent;

E.      makes, uses or causes to be made or used a record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state, relative to the medicaid program, knowing that such record or statement is false;

F.      knowingly applies for and receives a benefit or payment on behalf of another person, except pursuant to a lawful assignment of benefits, under the medicaid program and converts that benefit or payment to his own personal use;

G.      knowingly makes a false statement or misrepresentation of material fact concerning the conditions or operation of a health care facility in order that the facility may qualify for certification or recertification required by the medicaid program; or

H.      knowingly makes a claim under the medicaid program for a service or product that was not provided.

163.    Defendant presented, or caused to be presented, to the State of New Mexico a claim for payment under the Medicaid program knowing that such claim was false or fraudulent.

164.    Defendant presented, or caused to be presented, to the State of New Mexico a claim for payment under the Medicaid program knowing that the person receiving a Medicaid benefit or payment is not authorized or is not eligible for a benefit under the Medicaid program.

165.    Defendant made, used or caused to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the State of New Mexico knowing such record or statement is false.

166.    Defendant defraud the State of New Mexico by getting a claim allowed or paid under the Medicaid program knowing that such claim is false or fraudulent.

167.    Defendant made, used or caused to be made or used a record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state, relative to the Medicaid program, knowing that such record or statement is false.

168.    By reason of these payments, Plaintiff State of New Mexico was and continues to suffer damages in a substantial amount.

169.    Plaintiff State of New Mexico was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

170.    Plaintiff State of New Mexico, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XVI - *NEW YORK FALSE CLAIMS ACT*

171.    Relator incorporates by reference and re-alleges Paragraphs 1-35 and Paragraphs 51-56 as if fully set forth herein.

172.    This is an action for damages and civil penalties on behalf of the State of New York arising from false and fraudulent statements and records made or caused to be made by Defendant

to the State of New York in violation of the New York False Claims Act, N.Y. STATE FIN. LAW,

ch.13 § 187, et seq.

173.   That § 189 of the New York False Claims Act states:

Any person who:

a)   knowingly presents, or causes to be presented, to any employee, officer or agent of the state or a local government, a false or fraudulent claim for payment or approval;

b)   knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government;

c)   conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid;

d)   has possession, custody, or control of property or money used, or to be used, by the state or a local government and, intending to defraud the state or a local government or willfully to conceal the property or money, delivers, or causes to be delivered, less property or money than the amount for which the person receives a certificate or receipt;

e)    is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state or a local government and, intending to defraud the state or a local government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

f)   knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state or a local government knowing that the officer or employee lawfully may not sell or pledge the property; or

g)   knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or a local government;

Shall be liable: (i) to the state for a civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of damages which the state sustains because of the act of that person; and (ii) to any local government for three times the amount of damages sustained by such local government because of the act of that person.

174.    Defendant knowingly presented, or caused to be presented, to the State of New York, a false or fraudulent claim for payment or approval (see, by way of example, Wave II's claim level analysis of Omnicare Medical Supply Services attached as Exhibit I).

175.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of New York.

176.    Defendant defrauded the State of New York by getting a false or fraudulent claim allowed or paid.

177.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of New York.

178.    By reason of these payments, Plaintiff State of New York was and continues to suffer damages in a substantial amount.

179.    Plaintiff State of New York was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

180.    Plaintiff State of New York, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XVII - *OKLAHOMA MEDICAID FALSE CLAIMS ACT*

181.    Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

182.     This is an action for damages and civil penalties on behalf of the State of Oklahoma arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Oklahoma in violation of the Oklahoma Medicaid False Claims Act, OKLA. STAT. TIT. 63, § 5053.1, et seq.

183.     That § 5053.1(B) of the Oklahoma Medicaid False Claims Act states:

Any person who:

1.     Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;

2.     Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

3.     Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

4.     Has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

5.     Is authorized to make or deliver a document certifying receipt of property used, or to be used, by the state and, intending to defraud the state, makes or delivers the receipt without completely knowing that the information on the receipt is true;

6.     Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, who lawfully may not sell or pledge the property; or

7.     Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state,

is liable to the State of Oklahoma for a civil penalty of not less than Five Thousand Dollars ($5,000.00) and not more than Ten Thousand Dollars ($10,000.00), unless a penalty is imposed for the act of that person in violation of this subsection under the federal False Claims Act for the same or a prior action, plus three times the amount of damages which the state sustains because of the act of that person.

184.    Defendant knowingly presented, or caused to be presented, to the State of Oklahoma, a false or fraudulent claim for payment or approval.

185.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Oklahoma.

186.    Defendant defrauded the State of Oklahoma by getting a false or fraudulent claim allowed or paid.

187.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Oklahoma.

188.    By reason of these payments, Plaintiff State of Oklahoma was and continues to suffer damages in a substantial amount.

189.    Plaintiff State of Oklahoma was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

190.    Plaintiff State of Oklahoma, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XVIII - *STATE FALSE CLAIMS ACT*

191.    Relator incorporates by reference and re-alleges Paragraphs 1-41 as if fully set forth herein.

192.    This is an action for damages and civil penalties on behalf of the State of Rhode Island arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Rhode Island in violation of the State False Claims Act, R.I. GEN. LAWS § 9-1.1-1, et seq.

193.    That § 9-1.1-3 of the State False Claims Act states:

(a)    Any person who:

(1)    Knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(3)    Conspires to defraud the state by getting a false or fraudulent claim allowed or paid;

(4)    Has possession, custody, or control of property or money used, or to be used, by the state and, intending to defraud the state or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5)    Authorized to make or deliver a document certifying receipt of property used, or to be used, by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6)    Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the state, or a member of the guard, who lawfully may not sell or pledge the property; or

(7)    Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state,

is liable to the state for a civil penalty of not less than five thousand dollars ($ 5,000) and not more than ten thousand dollars ($ 10,000), unless such a penalty has been or will be imposed for that claim or violation

46

under the federal false claims act (31 U.S.C. § 3729 et seq.) in the same or prior action, plus three (3) times the amount of damages which the state sustains because of the act of that person except …

194.    Defendant knowingly presented, or caused to be presented, to the State of Rhode Island a false or fraudulent claim for payment or approval.

195.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Rhode Island.

196.    Defendant defrauded the State of Rhode Island by getting a false or fraudulent claim allowed or paid.

197.    Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Rhode Island.

198.    By reason of these payments, Plaintiff State of Rhode Island was and continues to suffer damages in a substantial amount.

199.    Plaintiff State of Rhode Island was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

200.    Plaintiff State of Rhode Island, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XIX - *TENNESSEE MEDICAID FALSE CLAIMS ACT*

201.    Relator incorporates by reference and re-alleges Paragraphs 1-35 as if fully set forth herein.

202.    This is an action for damages and civil penalties on behalf of the State of Tennessee arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Tennessee in violation of the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-101, et seq.

203.    That § 71-5-182 of the Tennessee Medicaid False Claims Act states:

(a)    (1)    Any person who:

(A)    Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing such claim is false or fraudulent;

(B)    Makes, uses, or causes to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false;

(C)    Conspires to defraud the state by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent; or

(D)    Makes, uses, or causes to be made or used, a record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state, relative to the Medicaid program, knowing such record or statement is false;

is liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), plus three (3) times the amount of damages which the state sustains because of the act of that person.

204.    Defendant presented, or caused to be presented, to the State of Tennessee a claim for payment under the Medicaid program knowing such claim is false or fraudulent.

205.    Defendant made, used, or caused to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the State of Tennessee knowing such record or statement is false.

206.    Defendant defrauded the State of Tennessee by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

207.    Defendant made, used, or caused to be made or used, a record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of Tennessee, relative to the Medicaid program, knowing such record or statement is false.

208.    By reason of these payments, Plaintiff State of Tennessee was and continues to suffer damages in a substantial amount.

209.    Plaintiff State of Tennessee was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

210.    Plaintiff State of Tennessee, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

### COUNT XX - *TEXAS MEDICAID FRAUD PREVENTION ACT*

211.    Relator incorporates by reference and re-alleges Paragraphs 1-41 as if fully set forth herein.

212.    This is an action for damages and civil penalties on behalf of the State of Texas arising from false and fraudulent statements and records made or caused to be made by Defendant

to the State of Texas in violation of the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES.

CODE, ch.36, § 36.001, et seq.

213.    That § 36.002 of the Texas Medicaid Fraud Prevention Act states:

Any of the following actions will constitute a violation of the Medicaid Fraud Prevention Act:

1)    Knowingly or intentionally making or causing to be made a false statement or misrepresentation of a material fact to permit a person to receive an unauthorized benefit or payment under the Medicaid program;

2)    Knowingly or intentionally concealing or failing to disclose an event that the person knows will affect the right to a Medicaid benefit or payment;

3)    Knowingly or intentionally applying for and receiving a Medicaid benefit or payment on behalf of another person and failing to use the benefit or payment on behalf of such person;

4)    Knowingly or intentionally inducing or seeking to induce the making of a false statement or misrepresentation of material fact concerning: i) the conditions or operation of a facility that may qualify for certification or recertification under the Medicaid program or ii) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

5)    Knowingly or intentionally charging, soliciting, or accepting a gift, donation, or other consideration as a condition for continued service to a Medicaid recipient, whose costs are paid for, in whole or in part, by the Medicaid program;

6)    Knowingly or intentionally presenting (or causing to be presented) a claim for payment under Medicaid for a product or service rendered by a person who is not licensed to provide such a product or service or if licensed, not licensed in the manner claimed;

7)    Knowingly or intentionally submitting a claim under Medicaid for a product or service that has not been approved by a health care practitioner or is substantially inadequate or otherwise inappropriate when compared to generally recognized standards within the particular discipline or within the health care industry;

8)    Knowingly or intentionally submitting a claim under Medicaid and failing to indicate the type of license and identification number of the health care provider;

9)      Knowingly or intentionally conspiring to defraud the state by obtaining an unauthorized payment or benefit from the Medicaid program; or

10)      A managed care organization that provides (or arranges to provide) health care benefits or services to Medicaid eligible individuals who knowingly and intentionally fails to provide the individual with such benefits or services, fails to provide the appropriate state agency with required information, or engages in fraudulent activity in connection with the enrollment of Medicaid eligible individuals

214.    Defendant knowingly or intentionally made or caused to be made a false statement or misrepresentation of a material fact to permit a person to receive an unauthorized benefit or payment under the Medicaid program.

215.    Defendant knowingly or intentionally induced or sought to induce the making of a false statement or misrepresentation of material fact concerning information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program.

216.    Defendant defrauded the State of Texas by getting a claim allowed or paid under the Medicaid program knowing such claim is false or fraudulent.

217.    Defendant was a managed care organization that provided (or arranged to provide) health care benefits or services to Medicaid eligible individuals who knowingly and intentionally failed to provide the State of Texas with required information, or engaged in fraudulent activity in connection with the enrollment of Medicaid eligible individuals.

218.    By reason of these payments, Plaintiff State of Texas was and continues to suffer damages in a substantial amount.

219.    Plaintiff State of Texas was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge

51

of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

220.    Plaintiff State of Texas, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

**COUNT XXI - *STATE OF VIRGINIA FRAUD AGAINST TAXPAYERS ACT***

221.    Relator incorporates by reference and re-alleges Paragraphs 1-41 as if fully set forth herein.

222.    This an action for damages and civil penalties on behalf of the State of Virginia from false and fraudulent statements and records made or caused to be made by Defendant to the State of Virginia in violation of the Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.1, et seq.

223.    That § 8.01-216.3 of the Virginia Fraud Against Taxpayers Act states:

Any person who:

1.    Knowingly presents, or causes to be presented, to an officer or employee of the Commonwealth a false or fraudulent claim for payment or approval;

2.    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth;

3.    Conspires to defraud the Commonwealth by getting a false or fraudulent claim allowed or paid;

4.    Has possession, custody, or control of property or money used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth or willfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

5.      Authorizes to make or deliver a document certifying receipt of property used, or to be used, by the Commonwealth and, intending to defraud the Commonwealth, makes or delivers the receipt without completely knowing that the information on the receipt is true;

6.      Knowingly buys or receives as a pledge of an obligation or debt, public property from an officer or employee of the Commonwealth who lawfully may not sell or pledge the property; or

7.      Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Commonwealth;

shall be liable to the Commonwealth for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages sustained by the Commonwealth.

224.     Defendant knowingly presented, or caused to be presented, to the State of Virginia a false or fraudulent claim for payment or approval.

225.     Defendant knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Virginia.

226.     Defendant defrauded the State of Virginia by getting a false or fraudulent claim allowed or paid.

227.     Defendant knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the State of Virginia.

228.     By reason of these payments, Plaintiff State of Virginia was and continues to suffer damages in a substantial amount.

229.     Plaintiff State of Virginia was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

230. Plaintiff State of Virginia, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XXII - *STATE OF WISCONSIN FALSE CLAIMS FOR MEDICAL ASSISTANCE ACT*

231. Relator incorporates by reference and re-alleges Paragraphs 1-41 as if fully set forth herein.

232. This is an action for damages and civil penalties on behalf of the State of Wisconsin arising from false and fraudulent statements and records made or caused to be made by Defendant to the State of Wisconsin in violation of the Wisconsin False Claims for Medical Assistance Act, WISC. STAT. § 20.901, et seq.

233. That § 20.931 of the Wisconsin False Claims for Medical Assistance Act states:

Any person who does any of the following is liable to this state for 3 times the amount of the damages sustained by this state because of the actions of the person, and shall forfeit not less than $5,000 nor more than $10,000 for each violation:

(a) Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

(b) Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

(c) Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

(d) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease any obligation to pay or transmit money or property to the Medical Assistance program.

(e)    Is a beneficiary of the submission of a false claim for medical assistance to any officer, employee, or agent of this state, knows that the claim is false, and fails to disclose the false claim to this state within a reasonable time after the person becomes aware that the claim is false.

234.    Defendant knowingly presented or caused to be presented the State of Wisconsin a false claim for medical assistance.

235.    Defendant knowingly made, used, or caused to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

236.    Defendant defrauded the State of Wisconsin by obtaining allowance or payment of a false claim for medical assistance, and knowingly made or used, or caused to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

237.    Defendant knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease any obligation to pay or transmit money or property to the Medical Assistance program.

238.    Defendant was a beneficiary of the submission of a false claim for medical assistance to the State of Wisconsin, knew that the claim was false, and failed to disclose the false claim to the State of Wisconsin within a reasonable time after the Defendant became aware that the claim was false.

239.    By reason of these payments, Plaintiff State of Wisconsin was and continues to suffer damages in a substantial amount.

240.    Plaintiff State of Wisconsin was unaware of the falsity of the claims made by Defendant through its wholly owned, controlled and operated facilities, and lacking knowledge

of the above described fraudulent acts, relied on the accuracy of Defendant's Medicaid reimbursement claims to its detriment.

241.    Plaintiff State of Wisconsin, being unaware of the inaccuracies and documentation deficiencies submitted by Defendant, paid and continues to pay Defendant for claims that should not have been and should not be paid, based upon Defendant's false and fraudulent Medicaid reimbursement claims.

## COUNT XXIII - *FEDERAL MEDICAL ASSISTANCE PERCENTAGE*

242.    Relator incorporates by reference and re-alleges Paragraphs 1-241 as if fully set forth herein.

243.    As alleged in Paragraph 18 above, the Federal Government pays a share of the medical assistance expenditures under each State's Medicaid program. That share is known as the Federal Medical Assistance Percentage ("FMAP") or Federal Financial Participation ("FFP").

244.    In addition to the states listed in Count V through Count XXII which have State False Claims Acts, the following is a list of States without False Claims Acts where Defendant's wholly owned, operated and controlled facilities submitted false and fraudulent Medicaid reimbursement claims:

    a.    Arkansas

    b.    Colorado

    c.    Connecticut

    d.    Idaho

    e.    Kansas

    f.    Kentucky

g.    Maryland

h.    Maine

i.    Missouri

j.    North Carolina

k    Ohio

l    Oregon

m.    Pennsylvania

n.    Vermont

o.    Washington

p.    Wyoming

245.    For each state listed in Counts V through Count XXII as well as paragraph 244

herein, the payment by the various States' Medicaid programs on the Defendant's false and

fraudulent Medicaid clams resulted in the Federal Government paying a FFP which it should not

have been paid.

**COUNT XXIV - *FALSE CLAIMS ACT 31 U.S.C. § 3730(h) (Retaliatory Discharge)***

246.    Relator incorporates by reference and re-alleges Paragraphs 1-245 as if fully set

forth herein.

247.    This is an action for damages arising from the illegal discharge of Relator by

Defendant in violation of the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

248.    That Section 3730(h) of the FCA states:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make
> that employee, contractor, or agent whole, if that employee, contractor, or agent is
> discharged, demoted, suspended, threatened, harassed, or in any other manner
> discriminated against in the terms and conditions of employment because of
> lawful acts done by the employee, contractor, or agent on behalf of the employee,
> contractor, or agent or associated others in furtherance of other efforts to stop 1 or

more violations of this subchapter. Such relief shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

249.    Relator presented a document to Defendant's Internal Audit committee reflecting the deficiencies outlined in Count II (attached as Exhibit J) and stated that said deficiencies resulted in fraud upon Medicare and the various State Medicaid programs.

250.    As a direct and proximate cause of Relator's presentation to Internal Audit, Defendant's CEO effectively discharged Relator by telling him to "begin looking for other employment."

251.    Thus, Relator engaged in protected conduct and Defendant threatened and effectively discharged Relator for lawful actions he took in furtherance of the filing of an action under 31 U.S.C. § 3729.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury.

## PRAYER

WHEREFORE, Relator prays for judgment against Defendant as follows:

a.      That Defendant be found to have violated and be enjoined from future violations of the False Claims Act, 31 U.S.C. § 3729-32, the Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. 175/3, the California False Claims Act, CAL. GOV'T. CODE § 12651(a), the Florida False Claims Act, FLA. STAT. § 68.082(2), the Louisiana Medical Assistance Programs Integrity Law, LA. REV.

STAT. ANN. § 46:438.3, the Massachusetts False Claims Act, MASS. GEN. LAWS ch.12, § 5(B), the Michigan Medicaid False Claims Act, MICH. COMP. LAWS § 400.603, the Montana False Claims Act, MONT. CODE. ANN. § 17-8-403, the Nevada False Claims Act, NEV. REV. STAT. § 357.040(1), the New Jersey False Claims Act, N.J. STAT. ANN. § 2A:32C-3, the New Mexico Fraud Against Taxpayers Act, N.M. STAT. § 27-14-4, the New York False Claims Act, N.Y. STATE FIN. LAW, ch.13 § 189, the Oklahoma Medicaid False Claims Act, OKLA. STAT. TIT. 63, § 5053.1(B), the State False Claims Act, R.I. GEN. LAWS § 9-1.1-3, the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-182, the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE, ch.36, § 36.002, the Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.3, the Wisconsin False Claims for Medical Assistance Act, WISC. STAT. § 20.931(2).

b.    That this Court enters judgment against Defendant in an amount equal to three times the amount of damages the Government has sustained because of Defendant's false or fraudulent claims. That because Defendant has operated, and is presently operating, under a corporate integrity agreement during most of the period covered by the Complaint allegations, the maximum civil penalty for each violation of 31 U.S.C. § 3729 is particularly warranted.

c.    That Relator be awarded the maximum amount allowed pursuant to § 3730(d).

d.    That this Court enter judgment against Defendant in an amount equal to three times the amount of damages the State of Illinois has sustained because of Defendant's false or fraudulent claims, plus the maximum civil penalty for each

violation of the Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. 175/3.

e.     That this Court enter judgment against Defendant for the maximum amount of damages sustained by each State because of Defendant's false or fraudulent claims, plus the maximum civil penalty for each violation of the California False Claims Act, CAL. GOV'T. CODE § 12651(a), the Florida False Claims Act, FLA. STAT. § 68.082(2), the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. § 46:438.3, the Massachusetts False Claims Act, MASS. GEN. LAWS ch.12, § 5(B), the Michigan Medicaid False Claims Act, MICH. COMP. LAWS § 400.603, the Montana False Claims Act, MONT. CODE. ANN. § 17-8-403, the Nevada False Claims Act, NEV. REV. STAT. § 357.040(1), the New Jersey False Claims Act, N.J. STAT. ANN. § 2A:32C-3, the New Mexico Fraud Against Taxpayers Act, N.M. STAT. § 27-14-4, the New York False Claims Act, N.Y. STATE FIN. LAW, ch.13 § 189, the Oklahoma Medicaid False Claims Act, OKLA. STAT. TIT. 63, § 5053.1(B), the State False Claims Act, R.I. GEN. LAWS § 9-1.1-3, the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-182, the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE, ch.36, § 36.002, the Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.3, the Wisconsin False Claims for Medical Assistance Act, WISC. STAT. § 20.931(2).

f.     That Relator be awarded the maximum amount allowed pursuant to the Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. 175/3, the California False Claims Act, CAL. GOV'T. CODE § 12651(a), the Florida False Claims Act, FLA. STAT. § 68.082(2), the Louisiana Medical Assistance Programs

Integrity Law, LA. REV. STAT. ANN. § 46:438.3, the Massachusetts False Claims Act, MASS. GEN. LAWS ch.12, § 5(B), the Michigan Medicaid False Claims Act, MICH. COMP. LAWS § 400.603, the Montana False Claims Act, MONT. CODE. ANN. § 17-8-403, the Nevada False Claims Act, NEV. REV. STAT. § 357.040(1), the New Jersey False Claims Act, N.J. STAT. ANN. § 2A:32C-3, the New Mexico Fraud Against Taxpayers Act, N.M. STAT. § 27-14-4, the New York False Claims Act, N.Y. STATE FIN. LAW, ch.13 § 189, the Oklahoma Medicaid False Claims Act, OKLA. STAT. TIT. 63, § 5053.1(B), the State False Claims Act, R.I. GEN. LAWS § 9-1.1-3, the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-182, the Texas Medicaid Fraud Prevention Act, TEX. HUM. RES. CODE, ch.36, § 36.002, the Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.3, the Wisconsin False Claims for Medical Assistance Act, WISC. STAT. § 20.931(2), and all relief to which they are entitled pursuant to said laws.

g.      That with respect to Relator's individual employment claim pursuant to 31 U.S.C. 3730(h), that Defendant immediately reinstate Relator to his former job at the same rate of pay with normal pay increases from the date of discharge to the date of reinstatement, pay Relator two times the amount of back pay, plus interest on the back pay, from the date of discharge to the date of reinstatement, and require Defendant to pay Relator's costs and attorneys fees associated with his individual employment claim in accordance with 31 U.S.C. 3730(h); and,

h.      That Relator be awarded all costs of this action, including expert witness fees, attorneys' fees, and court costs.

i.      That Relator recovers such other relief as the Court deems just and proper.

61

Respectfully Submitted,

Dale J. Aschemann, #6269347
ASCHEMANN KELLER LLC
300 North Monroe Street
Marion, Illinois 62959-2326
Telephone:  (618) 998-9988
Facsimile:  (618) 993-2565
E-Mail:  DaleA@quitamlaw.org

*Attorney for Relator,*
*John Stone*